G-usweiler, J.
This is an action in-partition in which the plaintiff claims one-sixth interest in certain valuable non-ancestral real estate, located in Cincinnati, Hamilton county, Ohio, as heir at law of Louisa Wilcox, who died about March 11, 1877. The realty in question came by deed from Nicholas Longworth in 1847 to Polly Smith for her life with remainder over to Louisa Wilcox in fee. Polly Smith deceased prior to Louisa Wilcox. Louisa Wilcox left no children, no-husband, no brothers or sisters of the whole or half blood, no father or mother, but left surviving her, representatives of her mother’s deceased brother and representatives of her father’s deceased brother, these representatives being related to the decedent, Louisa Wilcox, in the- same degree as cousins. Plaintiff claims as heir, being one of the cousins of decedent-, and being one of the children of the decedent’s father’s brother. The. defendant’s contention is that the uncles of the decedent, or their legal representatives, do not share as heirs, in that the estate should ascend and go to the lineal grandparents or their legal representatives.
The first question for construction and determination. in the instant case is subdivision 6, G. C., 8574, reading as follows:
“If the father and mother are dead the estate shall pass to the next of bin and their legal representatives to and of the blood of the intestate.”
We are Of the opinion that this estate being non-ancestral the next of kin related to Louisa Wilcox, deceased, are. her uncles of both the maternal and paternal side, and the legal representatives of said deceased uncles take by representation. It follows that plaintiff’s contention, is correct, she being a child of one of said uncles and a cousin to decedent, and she is entitled to share as heir and next of bin to .decedent as set out in her petition.
-.“Legal representatives,” as used in the statute of descents, means “lineal descendants.” Thomas v. Lett, 4 N. P. (N.S.), 393; 6 L. D., 429.
*3 The expression “next of kin,” as used in our statute, means the next of kin as determined by the statute of descent and distribution as construed by the courts, and while degrees of consanguinity are to be determined by the civil law and not the common law (Clayton v. Drake, 17 O. S., 367; Gildehaus v. Schildman, 10 N. P. (N.S.), 241; Prickett v. Parker, 3 O. S., 494; Curren v. Taylor, 19 O., 36), yet the statute of descent and distribution is the primary authority to determine the case. The statutory rule of descents is the only rule of descent in this state, and the next of kin as provided in G-. C., 8574, paragraph 6, must be determined in conformity with the manifest policy and spirit of the statute as interpreted and construed by the courts.
In Brahe v. Rogers, 13 O. S., 21, 31, it is said:
“And from that time (February 22, 1805, the date of the enactment of an act regulating the course of descent and distribution) to the present, under all the several revisions and amendments, the statutory rule of descents has always been assumed to be the only rule of descent and property applicable to the estates of intestates in this state.”
In Penn v. Cox, 16 O., 30, 32, the court says:
“ We understand the act regulating descents and the distribution of personal estates as embracing the whole subject and intended to provide for all possible cases.”
The statutes relative to both ancestral and non-ancestral property clearly show a settled policy to prefer children as being nearer of kin than parents, and brothers and sisters as nearer of kin than either parents or grandparents.
Section 8574, G-. C.,’ relating to non-ancestral property, in conformity with the rule of the common law against the estates lineally ascending, gives the estate of a decedent to his children, to the husband and wife or to the brothers and sisters of the whole or half blood before devolving it upon the parents, thus recognizing that brothers and sisters are nearer of kin than parents, and by parity of reasoning, uncles and aunts are nearer of kin than grandparents. G. C., 8573, which relates to ancestral property, recognizes the same principle, and is in harmony with this interpretation as to who are next of kin.
*4 Our Supreme Court, in the case of Curren v. Taylor, 19 O., 36, recognizing this policy of our statutes of descent, has adopted this interpretation, as to who are the next of kin. G. C., 8573 and 8574, after making certain specific provisions as to the course of descent, provide that in the absence of persons entitled to take the estate under the preceding provisions, that “the estate shall pass to the next of kin of the intestate” or their legal representatives, the ancestral statute limiting such next of kin to the blood of the ancester from whom the estate came.
In the case of Curren v. Taylor, above referred to, it became necessary to construe .this phrase “the next of kin” as used in the ancestral statute, and the court there held that the brothers and sisters of the intestate’s father and not the grandfather should take the inheritance. The court there- says:
‘ ‘ The argument is pressed with earnestness, that the civil law should govern, and not the common law, in determining who is the next of kin intended in this clause, and that in accordance with the better feelings of our nature, the grandfather is regarded as a. nearer relative than uncles or aunts. It has been the settled policy of the state, in its law of descent, to direct the property of a deceased brother to pass to the brothers and sisters who survive him, to hold them in this respect as nearer than the father, or at all events to prefer them to the father even in a case where all the property had come by gift directly from him. If George Arter had died without a child, the estate now in controversy would, under the statute we are now considering, have passed to his brothers and sisters, and not to his father. Now it is difficult to understand why this law should be suffered to remain in force here, where statutes are so easily, and in point of fact, so frequently subjected to alteration and repeal, if there be in reality any general sentiment or feeling opposed to this principle of descent. In putting a construction upon the statute, or upon parts of it, we, as a court, at least, would feel ourselves called upon to give some attention to the principle so recognized in the law of descents. * * '* We think that by a proper interpretation of the statute in question, the brothers and sisters of the intestate’s father, and not the grandfather, should take the inheritance.”
This language of the court was. cited with approval in the case of Lyon v. Lyon, 1 C. C. (N.S.), 246, 251; 14 O. D., 498, *5 as establishing the principle that the policy of the law shown in one part of the statute is to be applied to and control in the interpretation of other parts of the same statute, in this ease, that the heirs of the half blood should be excluded in determining the next of kin under the sixth paragraph of G-. C., 8574. The court there says:
“Suppose, for instance, to show the analogy between this ease I just read from (Curren v. Taylor) and the case at bar: That this father had the property; that he died seized of the property, not the son, Andrew L, but Lucius died seized of this property, and he failed for heirs in the lineal line. The statutes would not send it back to the father, but would send it to his brothers of the whole blood. If the father had died seized, then the statutes of the state would send it to his brothers of the whole blood. * * * We think that if this estate came back to this father or to the mother, and the father or mother held for ever so short a time, if they lived just long enough to arrest the title in themselves after the death of the son, it would have gone to the brothers of the whole blood, and there is no reason that it should not go to the same heirs that it would have gone to if they had lived long enough to arrest the title. ’ ’
'To show the analogy between the cases of Curren v. Taylor and Lyon v. Lyon and the case at bar, let us suppose that the father or mother of Louisa Wd°ox had survived her for ever so short a time, and had then died, the statute would send the estate to the brothers and sisters of such parent (the uncles and aunts of Louisa Wilcox) and only upon the failure of such uncles or aunts and their legal representatives, would the estate pass to the grandparents, “and there is no reason why it should not go to the same heirs that it would have gone to if they had lived long enough to arrest the title.” (Lyon v. Lyon.)
In the case of Curren v. Taylor, the grandfather claimed the estate, first, as an ancestor, second, as next of kin of the grandson. Both of these claims the court decided in the negative. The principle enunciated is not an obiter, but the deliberate decision of the court upon the question before it, that when “next of kin” are to be determined under our statute of descent and distribution, the uncles and aunts of the intestate are to be preferred as nearer of kin than the grandparents. The fact that *6 .this decision was made in construing the statute as to ancestral property does not alter the ease, the only difference between the statutes in this respect being that the estate devolves upon the “next of kin and their legal representatives, to and of the blood of the intestate,” in case of non-ancestral property, and upon the “next of kin to the. intestate of the blood of the ancestors from whom the estate came or their legal representatives,” in ease of ancestral property.
We are of the opinion, therefore, that under the statute and these decisions of our courts, the uncles of Louisa Wilcox are her next of kin, and that the legal representatives of deceased uncles take the shares of such decedents.
The second contention of plaintiff is that the property in question was sold to pay debts by Anthony Rice, administrator of the estate of Louisa Wilcox, deceased, to Annie Conley (case No. 54874, Hamilton County Common Pleas Court) in 1878 without making plaintiff a party to said proceedings, and it is admitted that all of said proceeds of sale were used to pay said debts.
It is admitted that the cousins of Louisa Wilcox, deceased, on the maternal side were properly made parties in the administrator’s sale case referred to, but that the plaintiff and other cousins of Louisa Wilcox on the paternal side were not made parties thereto. It is proven in evidence that this plaintiff had actual notice of said sale proceedings and knew that Annie Conley purchased said estate under said sale from said administrator and went into possession, and that the proceeds from said sale were all consumed in the payment of debts of said Louisa Wilcox, deceased. Plaintiff contends that because she and the other cousins on the paternal side of the decedent, Louisa Wilcox, were not made parties to said administrator’s sale and were not served with summons, that the plaintiff did not have her day in court and that said sale did not affect her rights as heir; that she thus became a tenant in common with Annie Conley and her privies and grantees ever since and that as against this plaintiff, Carrie Ilirsch can not plead adverse title, etc.
It is not denied that plaintiff had actual notice of said administrator’s sale in 1878 to Annie Conley, and that no service was *7 made upon her, advising plaintiff thereof as she is entitled to .in law. 'The evidence discloses that the administrator delivered his deed to Annie Conley in July, 1878; that she deeded said .property to Louisa Felsenthal in March, 1905, and that she gave a deed therefor to the defendant, Carrie ILirseh, in October, 1908, and that all the grantees occupied the premises, claiming exclusive ownership openly under color of title adversely against the world. Can plaintiff at this late time claim •title in herself under all these circumstances? The evidence discloses that there were no circumstances surrounding the purchase and the taking o'f possession of said premises by Annie Conley that would indicate any question of title in anyone else as tenant in common; on the contrary, Annie Conley took possession and occupied the same as the sole title holder, the exclusive proprietor, paid the taxes for twenty-seven years as owner thereof, and held the same openly to plaintiff’s notice, as such unequivocal owner. There is no denial that plaintiff knew that Annie Conley in 1878 was claiming said premises as sole and exclusive proprietor and owner. If plaintiff did have this actual positive notice, is she not barred now by the statute of limitations?
The defendant pleads open, notorious and adverse title as against plaintiff. Plaintiff contends that the administrator’s deed to Annie Conley passed no title as affecting her because of lack of service upon her and as to her, the occupancy of said premises by Annie Conley and her privies was not adverse but that of tenants in common with plaintiff.
The evidence clearly shows that the proceeds secured from the sale by the administrator of the premises herein were used entirely to pay the debts of the decedent owner in 1878, and that nothing was left for distribution to the heirs. By force of Stout v. Stout, 82 O. S., 358, the rights of the heirs are inferior and subsequent to .that of the administrator to sell to pay debts, ‘even admitting that the title descends to the heirs. The right of- the heirs to partition is subservient -to the right of the administrator to sell to pay debts,' and if all the proceeds derived fr-om said sale were so used it is hard to conceive how the heirs would have any claim in law or equity, whether served •' with process or not.
*8 However, for the purpose of argument even if we should admit that plaintiff is correct in her contention that the lack of service of process upon her made her a tenant in common with Annie Conley, the grantee under the administrator’s deed, does not the statute of limitations bar her right now to claim against adverse possession even without color of title?
It is true generally that the mere- naked possession by one tenant in common is not in law adverse to the other co-tenant because it is not antagonistic or inconsistent with the co-tenant’s claims. But the instant case presents undisputed evidence that plaintiff knew of the administrator’s sale, the purchase of the premises by Annie Conley, of her occupancy since 1878 under an exclusive, open claim of ownership against the world; occupying all of the property, paying the taxes as owner; that her grantees and privies have likewise so occupied and possessed said premises for more than twenty-one years, in fact up until 1912, when for the first time, plaintiff lays claim to said realty by filing her suit in this case. The evidence indicates actual, open, notorious exclusive, continued, adverse hostile possession against the world and against plaintiff since. 1878.
Even if plaintiff should be regarded as a tenant in common, the evidence in the instant case indicates that the possession and occupancy and the payment of taxes all these years by Annie Conley and her privies was of an overt character, claiming title, unequivocally asserting ownership antagonistic and hostile' to every and any person claiming whatsoever, and especially adverse to plaintiff’s claim, and not that of naked possession such as a tenant in common. 'This was an assertion of an independent, absolute title as against plaintiff and the world, a direct assertion of entire title and a public proclamation to all persons that she and her privies were the owners of said estate. ' Annie Conley took the property under color of title at least. She went into possession under such title and she and her privies continued in such possession openly with actual notice to plaintiff and adversely as against plaintiff’s claim as tenant in common for thirty-four years.
We are of the opinion that the holding of Annie Conley was a denial of plaintiff’s claim and was clearly adverse to this *9 plaintiff and that she had actual notice thereof at the time, in 1878, and has had ever since. 8 Dec. Rep., 101; Ward v. Ward, 11 C.C.(N.S.), 396; 13 Dec. Rep., 862 Earl v. Hall, 14 O. D. (N. P.), 234; 4 O. L. R., 389; Wilson, Admr., v. Wilson et al, 6 N.P. (N.S.), 489; Gill et al v. Fletcher, 74 O. S., 295. We find from the evidence that Annie Conley, the grantee under the administrator’s sale, asserted ownership of the entire premises herein in an unequivocal manner by positive and overt acts, hostile and to the exclusion of plaintiff’s rights, if we should admit plaintiff was a tenant in common, and it follows that such assertion of title against a co-tenant will become, and has become adverse by the lapse of time, innuring to this defendant a perfect title by adverse possession for more than twenty-one years. Youngs v. Heffner, 36 O. S., 232; Freeman on Co-tenancy and Par., Section 230 et seq.
We are of the opinion that color of title was not necessary in this case in view of the open, unequivocal, hostile,- exclusive, notorious, antagonistic, adverse occupation by Annie Conley and her privies all of whom occupied openly and with actual notice to plaintiff to the exclusion of the plaintiff’s rights. Lessee of Paine et al v. Skinner et al, 8 Ohio, 159; McNeely v. Langan, 22 O. S., 32; Wilson v. Wilson et al, 11 C. C. (N.S.), 450; Humphries v. Huffman, 33 O. S., 395; McCreary v. McCreary et al, 11 N.P.(N.S.), 401. It follows that the title of the defendant, Carrie Hirsch, is held perfect and quieted, partition is denied and the petition of the plaintiff will be dismissed at plaintiff’s costs.